## George Sotello v. The State.

### No. 6793. Decided May 3, 1922.

Poisoning Food—Accomplice—Corroboration.

Where, upon trial of poisoning food by mixing strychnine with sugar, with intent to injure another, the testimony of the accomplice was not sufficiently corroborated by other evidence, the judgment must be reversed and the cause remanded. Following Needham v. State, 233 S. W. Rep., 968, and other cases.

Appeal from the District Court of La Salle. Tried below before the Honorable Covey C. Thomas.

Appeal from a conviction of poisoning food; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Magus Smith,* for appellant.—Sanders v. State, 112 S. W. Rep., 68; Harper v. State, 11 Texas Crim. App., 1; and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Conviction is for poisoning food; punishment fixed at confinement in the penitentiary for a period of five years.

The averment is that strychnine was mingled with sugar with the intent to injure one Porfirio Vidales.

An analysis of the testimony shows that Margartia de Luna was extending her carnal favors to the appellant and others; that she desired a separation from her husband but wanted to retain her children. By a letter to a woman friend, she sought means of killing her husband; that appellant advised her to kill him, and furnished her certain powders for that .purpose. Certain cans containing powders were found in her possession upon her arrest. The arresting officer took possession of these and placed samples of them in the hands of Mr. Dossey, a traveling salesman for a drug company.

According to the witness Nestor, he received from Dossey two flat boxes marked No. 1 and No. 2. No. 1 contained half a grain of strychnine to a teaspoonful. No. 2 contained none. A dose of strychnine is from 1/30 to 1/60 of a grain.

Appellant, some time before the offense was charged to have been committed, had bought strychnine from a druggist, at a time when, according to the druggist, it was being sold every day for the destruction of rats. Nestor, a chemist who examined the mixtures, testified that he would not say for certain that those exhibited upon the trial were the same that he had examined, though they appeared

similar.  He received them from Mr. Dossy, but makes no claim of knowledge of the source from which Dossey received them.

From the testimony of the accomplice Margartia de Luna, she had had improper relations with the appellant and wanted a divorce from her husband.  Failing to obtain it, she sought other means.  On separate occasions, the appellant brought her two packages of medicine.  These she identified as those found among her effects after her arrest.  Appellant threatened to kill her unless she killed her husband, and exhibited a pistol at the time he made this threat.  Appellant loaned her money with which to pay for securing the divorce.  From other testimony, the illicit relations between her and the appellant were shown; also the effort to secure the divorce and its failure.  Two cans of powders were found in her house.  Samples of these were delivered to Dossey.  She wrote a letter to Dona Rita.  In the letter to Rita Garcia, dated April 1, 1921, among other things, she wrote thus:

"Mrs. Rita, I answered your letter and I want you to answer me at once.  I have great confidence in you next to God.  I think that you will save me from him and upon it taking effect I will pay you as sure as that is a God.  I will not deceive you.  I tire of making remedies for this man, my husband, and they don't accomplish the purpose, why is it?  I have made a powder and put it in Grandma's Tea, so that he will leave and a bottle of medicine has been worthless to me.  All, I have given so that he will leave and instead of leaving he stays more at the house and I am now making remedies to see if he will take sick and die and they are worthless to me and *I am giving him boiled horned frog and in powder in the food* and a weed that has a potato on it, boiled in powder and it not even gives him a stomachache.  I want a medicine that will put him in bed but is not too violent within a month or fifteen days and he will die.  I want to make him very weak and with this sickness, die.  What I want is for him to leave but he wants to take away from me my boys but I, on account of my sons, am in this business.  I *and* a medicine that can be used in coffee."

Margartia de Luna.

"I do not want to be seen that it is poison because they will blame us.  Do all possible as my life is at stake for a nickel, and I will pay you for all your work.  If you cannot send them, tell me so that I may send some person for them."

This letter, it seems, was given to the appellant but not delivered to Mrs. Garcia.  Another letter was found in the trunk of the appellant.  The author is not given.  From it we take the following quotation:

"Affectionate Sir: I received your letter in which I see that I have offended you very much.  Well, I thought we had this confidence.

I could some day see something and tell you but now it is that all that I have seen and that all I have to suffer on account of two mortifications for one soul. I am not the person now to say anything to you. I haven't the same honor. In your letter you bemean me very much. If you only knew that I have never put you on an equality with me, why did you fall in love with me if I have all the stain and if you are going to do this every time for these motives you will face me with your final action. All this is by me well understood and know that these have offended me. As for me, I do not deserve that you should ask my pardon ever, an adultress like I, I am worthless dust, all weighing on me and I regret all as there is in me no pleasure. I cry in the night about my luck as a disgraced woman. You love your boys and you think that I do not love mine, for the love of them I am in this mortification. In the other paper you tell me of the payment my husband made. When he came I asked him if he had settled the account and he told me yes, then I told him that I was going to work so I could see how I could pay, even if it took a year or two, if I did not die. If there is any way you could come today I will tell you that the medicine is no good. I make it every day, I don't think it is any good. This is all I have to say."

The record does not disclose the writer of this letter, nor to whom it was addressed, further than the fact that it was in appellant's trunk at the time of his arrest and is probably the letter mentioned in this testimony.

Appellant testified that he had been in jail since his arrest and had talked to no one except his lawyer and son and these in the presence of an officer. He admitted that he had had illicit relations with the woman, but denied that he had instigated her to poison her husband or threatened her. He also admitted that he bought some strychnine for rat poison from a druggist in the early part of the year, before any divorce proceeding had been established. The letters introduced in evidence being exhibited to him, he said that he could not read but that friends had read such letters as he received and that he remembered receiving one from Margartia de Luna like the second letter introduced in evidence; that he had recommended to Margartia de Luna that she use boiled horned frog to induce her husband to quit her and told her that that would not hurt him. He said that others besides himself were on terms of criminal intimacy with the woman; that before his arrest he had ceased his relations with her; that he did not want to marry the woman.

If it were established that one of the cans found in the home of Margartia de Luna contained strychnine, the corroboration of her testimony would, in our judgment, be inadequate. The law forbids the conviction upon her testimony alone and demands its corroboration by other evidence tending to connect the appellant with the

commission of the offense, and declares the corroboration insufficient if it merely shows that the offense was committed. Code of Crim. Proc. Art. 801.

Appellant's connection with the affair, according to his testimony, was his improper relations with the witness De Luna and his advice to give her husband boiled horned frog as a means of abating his affection for her. In her letter to Rita Garcia, introduced by the State, she declares that she had given him boiled horned frog to make her husband leave but that he remained more closely at home, and she urgently requested Rita Garcia to furnish her with some potent poison. In her letter to appellant, the only reference to medicine is that in which she says that she makes it every day and that it is "no good." Her testimony tends to support the appellant's testimony that as an anti-affection potion he had recommended boiled horned frog, and to indicate that being disappointed in its effect, she turned to her friend, Mrs. Rita Garcia.

In our opinion, however, the evidence does not satisfactorily show that the substance which was contained in the cans which were found in the home of de Luna contained strychnine. For proof of this essential fact the State relied upon the analysis made by the witness Nestor. Proof by competent and sufficient evidence that the substance analyzed by nestor and found to contain strychnine was identical with that found in the possession of de Luna was necessary. The powders obtained from de Luna were delivered to Dossey. He was a citizen of the State and resided in San Antonio, but was not called as a witness. His testimony that the articles which he delivered to Nestor were identical with those received from the officer would seem to have been available. It was the best evidence of that fact and no reason is given for the failure to produce it. Under these circumstances, the identity could not be inferred against the appellant. On the whole record, we are impressed with the view that the corroboration is not sufficient.

We have recently had occasion to review the authorities relating to the subject of accomplice testimony in the case of Needham v. State, 90 Texas Crim. Rep., 86, 233 S. W. Rep., 968. Applying the principles there enunciated to the evidence before us, we are of the opinion that the verdict is not supported by sufficient legal testimony.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*